150    638
29 SC 1511

## McCool *v.* Lucas Coal Co.. Ltd., Appellant.

*Risk of employment—Infant—Parent—Negligence.*

Where a parent permits a child of tender years to engage in a dangerous occupation, such parent is guilty of negligence *per se.*

The parent owes to the child the duty of protection, and this includes restraint from exposure to dangers with which one of its years and discretion is unfitted to cope.

Where this duty is neglected the parent is said to be *in pari delicto* with a negligent defendant, and, though the infant may recover against a wrongdoer for an injury caused partly by his own imprudence, the parent cannot.

The parent assumes all the risks naturally and reasonably incident to the employment in which the child is permitted to engage, which includes the indiscretion and rashness of youth that may lead him to needlessly expose his person to danger.

*Dangers incident to business—Coal breaker.*

A parent has a right to assume not only that his child will be provided

with suitable implements and means to carry on the business which he is set to do, but also that the place in which his service is to be performed will be reasonably suitable and free from dangers not ordinarily attendant upon the business.

The absence of a bell or speaking tube in a coal breaker by means of which a slate-picker boss may signal the engineer when it becomes necessary to stop the engine, and the use of a door opening into a constantly operated elevator shaft, to call to the engineer, will not render the coal company liable to a parent for the death of an infant of tender years by being struck by the machinery in the shaft, when he went to call the engineer, where there was another perfectly safe way to reach the engine room and no order was given as to the way to go.

While the employer might owe the child the duty of exercising such watchfulness and oversight, or at least giving such instruction and admonition, as would, with proper obedience on his part, insure him against harm; and while the neglect of such duty might render the employer liable to the child, it will not to the negligent parent.

*Fellow servant—Slate-picker and slate-picker boss.*

It seems that a slate-picker boss is not a vice-principal, who, by giving orders to the coal pickers to notify the engineer to stop the engines, could fix liability upon the defendant; being engaged in the same common work and performing duties and services for the same general purpose, he is a fellow servant with the slate picker, though the latter is subject to his direction.

Argued Feb. 22, 1892.    Appeal, No. 61, July T., 1891, by defendant, from judgment of C. P. Lackawanna Co., Oct. T., 1885, No. 466, on verdict for plaintiff, Hugh McCool.    Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit for damages for death of minor child by alleged negligence of defendant.

The evidence on the trial, before GUNSTER, J., was to the following effect: Plaintiff's son, about ten years of age, was, with his father's knowledge, employed in defendant's coal breaker as a slate-picker.    While so engaged a pair of rolls in one of the shutes became blocked with coal, and it was necessary to stop the engine promptly.    The signal was usually given by the oiler, but he was at this time in another part of the breaker.    It was the duty of the picker-boss to give the order to stop the engine, but he could not leave his place where he held up the coal to keep it from getting into the rolls to prevent injury to the belts and machinery.    He accordingly " told some of the boys to go out and stop the engine."    Plaintiff's

son volunteered to go. The most convenient method was to go to the shaft, through which the cars loaded with coal were carried to the top of the breaker, and shout through an open door to the engineer on the next floor below. This door was some two and a half feet above the floor. Soon after the child was sent, he was found lying across the door-sill with his feet on the floor and his head crushed in. In order to be injured by the carriage and machinery in the shaft it would be necessary for him to put his head through the door six to eighteen inches; but there was testimony that, owing to the noise of the machinery, he could not have made the engineer hear him without putting his head into the shaft. There were steps leading from the place where the boys were at work to the outside, and a person could go down the steps and around, a distance of 300 or 400 feet, into the engine room without danger. This would have taken probably three or four minutes, during which time the belts might come off the wheels. The usual way of calling was down the shaft above described. There was evidence that it was customary, in some breakers, to have a bell in the engineer's room connected with a wire running into the picking room in order to notify the engineer when the rolls were clogged. The superintendent had asked for a signal bell, but it was not put in until after the accident.

Binding instructions for defendant were refused. [1]

*Error assigned* was such instruction, quoting it.

*S. B. Price*, for appellant.—The breaker-boss is a fellow servant: Redstone Coke Co. v. Roby, 115 Pa. 364; Reese v. Biddle, 112 Pa. 72; Waddell v. Simoson, 112 Pa., 567. Besides, the boy volunteered to do the work.

The absence of a signal bell was not the immediate cause of the injury. Nor did it make it necessary to signal from the door in the shaft, for the way by the outside stairs was safe. But even signaling by the shaft was free from danger, unless some part of the body was put into the shaft, which would.be contributory negligence. The father having knowingly permitted his son, a child of tender years, to engage in employment of known danger, the contributory negligence of the child will be imputed to the parent. The latter is *in pari delicto* with a negligent defendant: Smith v. O'Connor, 48 Pa. 223; and

cannot recover: Smith v. Pass. Ry., 92 Pa. 450; Glassey v. R. R., 57 Pa. 172; Schwenk v. Kehler, 15 Atl. R. 694.

*H. M. Hannah*, for appellee.—An employer is bound to provide his employees with safe and proper materials, tools, machinery and implements: Shearman & Redfield, Negligence, § 194; Stringham v. Stewart, 100 N. Y. 516; Mullan v. Southern Mail S. S. Co., 78 Pa. 25; Baker v. Allegheny R. R., 79 Pa. 211; Pa. & N. Y. R. R. v. Mason, 106 Pa. 286; Rummell et al. v. Dilworth, 111 Pa. 343; Lewis v. Seifert, 116 Pa. 647. This was not done here. The boy was placed in a dangerous position without necessity. Other mine operators provided apparatus for signaling without risk; and the failure of defendant to do as others do caused the accident. And this is not a case of want of due diligence in ascertaining what should have been supplied, for the attention of the owners had been called to the matter.

It was not the act of the fellow servant that injured the deceased. The co-employee merely failed to guard the boy from the consequences of the master's negligence. Where the act of the co-employee merely co-operates with the negligence of the master in causing the damage, the master is not relieved from liability. This state of facts renders both liable: 16 A. & E. Ency. L., p. 453, et seq.; Fuller v. Jewett, 80 N. Y. 46; Cone v. D., L. & W. R. R., 81 N. Y. 209; Ellis v. N. Y. & E. R. R., 95 N. Y. 548; Pantzar v. Tilly Foster Mining Co., 99 N. Y. 368; Stringham v. Stewart, 100 N. Y. 526.

Contributory negligence is not chargeable against a child of tender years: Nagle v. Allegheny R. R., 88 Pa. 35; Schilling v. Abernethy, 112 Pa. 437; West Phila. Pass. R. R. v. Gallagher, 100 Pa. 528.

The father cannot be charged with having exposed his child to a risk or danger not necessarily incident to the business and entirely unknown to the father. As to proper care on part of parent, see Kay v. P. R. R., 65 Pa. 276; P. A. & M. R. R. v. Pearsons, 72 Pa. 172; P. & R. R. R. v. Long, 75 Pa. 265. In order to defeat the parent's right of action he must be in fault: Shearman & Redfield, Negligence, § 72.

OPINION BY MR. JUSTICE HEYDRICK, June 1, 1892.

If the unfortunate boy, for the loss of whose services the

father seeks compensation in this suit, had escaped death, and were here asking indemnity for injuries received while in the service of the defendant, it might be a question whether the employer did not owe him the duty of exercising such watchfulness and oversight, or at least giving such instruction and admonition as would, with proper obedience on his part, have insured him against serious harm. But it is not his cause that is to be passed upon; it is that of an adult father, who, if he did not actually place his son in a dangerous service, at least suffered him to engage and continue in such service. Such sufferance is said to have the sense of permission; and, where the danger is great, and the child is of tender years, it is said to be negligence *per se* : R. R. Co. v. Long, 75 Pa. 257 ; Smith v. Passenger Ry. Co., 92 Pa. 450. The father owes to his infant child the duty of protection, and this includes restraint from exposure to dangers, with which one of its years and discretion is unfitted to cope. When this duty is neglected the father is said to be *in pari delicto* with a negligent defendant, and though the infant may recover against a wrongdoer for an injury caused partly by his own imprudence, the father cannot: Smith v. O'Conner, 48 Pa. 223 ; Glassey v. R. R. Co., 57 Pa. 172. He assumes all the risks naturally and reasonably incident to the employment in which he permits his son to engage, not the least of which is, that the indiscretion and rashness of youth will lead him to needlessly expose his person to danger. He has the right, however, to assume not only that his son will be provided with suitable implements and means to carry on the business which he is set to do, but that the place in which his service is to be performed will be reasonably suitable and free from dangers, not ordinarily attendant upon the business. Tested by this rule, it will be found that the defendant was not shown to have been blameworthy. No attempt was made to show that the defendant's coal breaker was inferior in its structure to those in ordinary use, or that it was beset with dangers not common to and inseparable from all similar establishments. The one complaint made is, that the slate-picker boss was not provided with a speaking tube or bell wire with which to signal the engineer when it became necessary to stop the engine, and to that alleged defect the fatal accident was sought to be attributed. A few minutes before the acci-

dent the rolls of the breaker became clogged, and the slate-picker boss, to use his own language, "told some of them (meaning the slate-pickers) to go out and stop the engine." It is claimed that the plaintiff's son responded by going to the hoisting shaft, thrusting his head through an open door, the sill of which was two and a half feet above the floor upon which he stood, and shouting the order to the engineer somewhere below, because his lifeless body was found ten minutes later hanging over the sill of the door, and bearing evidence that he had been struck by a descending car. The same witnesses, however, who detailed the facts from which it is inferred that the boy went to the shaft to give the order to the engineer, and in so doing received the fatal blow, testify that there was another and perfectly safe way by which he could have reached the engine room. This fact, in the absence of evidence that the defendant ordered the boy to go to the shaft to give the direction to the engineer, is fatal to the plaintiff's case. The slate-picker boss was not a vice-principal, who, by giving such an order, could fix liability upon the defendant; being engaged in the same common work, and performing duties and services for the same general purpose, he was a fellow servant with the boy, though the latter was subject to his direction: Coal Co. v. Jones, 86 Pa. 432; D. & H. Canal Co. v. Carroll, 89 Pa. 374. But it did not appear that even he had directed the boy to go to the shaft.

The judgment is reversed.