# Cosgrove *v.* Hay, Appellant.

*Negligence—Infant—Duty to guard infant—Damages.*

1. Where a man invites or permits a boy of five and one-half years old to follow him into a dimly lighted barn owned by himself, and the boy falls into an open cistern in the floor of the barn and is drowned, the owner will be liable in damages for the death of the boy.

2. In estimating the value of the life of a young boy and consequent damage by his death, much must be left to the sound discretion of the jury. They may properly take into consideration the age and health of the child, the cost of his maintenance and the occupation and circumstances of the parents.

Argued April 18, 1913. Appeal, No. 32, April T., 1913, by defendant, from judgment of C. P., No. 3, Allegheny Co., Nov. T., 1909, No. 178, on verdict for plaintiffs in case of Thomas J. Cosgrove and Sarah C. Cosgrove, his wife, v. Jonathan Hay. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for death of a boy. Before DAVIS, J.

The court charged in part as follows:

The mother of this child, Sarah S. Cosgrove, testifies that she was across the street from where this stable was; that she was on the second floor, I think, above the street, looking out of the window. She says that when she was looking out of the window towards this stable the doors of the stable were open, or one of them, that the child and defendant and another man were standing right in the doorway of the stable; that the three of them turned and went into the stable, and that the defendant shut the door. Now, take these circumstances, if they are true, and all the inferences are for you, gentlemen, from the facts as related to you by the witnesses on the stand. Is it a fair inference from these

facts that that child went into the stable with the permission and the knowledge of the defendant? If it did, then the defendant, under such circumstances, would owe the duty to the child while it was in the stable to guard it against all dangerous conditions existing, such as an open cistern. [3]

[If you find for the plaintiffs, then you come to the question of damages. This child was five years old. These plaintiffs are entitled to recover for the loss of services of the child during its probable length of life up until it would be twenty-one years of age. As against that amount for the loss of services (whatever you may determine they were worth) is the cost of education and maintenance, such as clothing and providing against sickness and all that. That must be considered as against the services that the child might render until he was twenty-one years of age. While the law fixes the duty upon the parents of providing for their children, it gives the parents the right to their earnings. So that you have to consider in this case the circumstances of the parents, and the probable walk in life that this child would have had until he was twenty-one years of age. What earnings, if any, would probably go, as a money value, to these parents? And then deducting from that what would be the natural and probable cost of maintaining this child. You heard the mother's testimony on the stand that at the time of the accident this child was going to a kindergarten school, which was an expense, and that they intended to educate the child. In addition to the loss of services, whatever you may determine those services were worth to the parents, they are also entitled to any expenses they were put to by reason of the death of the child. You have in evidence that the funeral expenses amounted to $105. So that you have merely those two items to consider on the question of damages, the expense they were put to in the way of funeral expenses, amounting to $105, and then the value of the services, to be de-

termined as the court has indicated to you from the evidence. Recollecting, however, that before you come to the question of damages you must determine the question of the liability of the defendant. That liability depends upon whether this accident and the resulting death was caused by some negligent act of the defendant, whether this child was there with his knowledge and permission whereby it became his duty to exercise proper care to guard the child against the danger of the open cistern.] [4]

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (4) above instructions, quoting them.

*J. S. Ferguson*, with him *O. P. Robertson*, for appellant.—A child of tender years may be a trespasser and be subject to the consequences of his trespass: Rodgers v. Lees, 140 Pa. 475; Feehan v. Dobson, 10 Pa. Superior Ct. 6.

To this boy as a trespasser the defendant owed no duty except to refrain from willfully and wantonly and recklessly exposing him to danger: Bjornquist v. B. & M. Ry. Co., 185 Mass. 130; Auternoitz v. N. Y., N. H. & H. R. R. Co., 193 Mass. 542.

*Meredith R. Marshall*, with him *Rody P. Marshall*, for appellee.

OPINION BY HENDERSON, J., July 16, 1913:

The plaintiffs' son aged about five and one-half years, was drowned in a cistern in a barn owned by the defendant. The accident occurred in the middle of the day while the defendant and William Gilmore who was working for him were in the barn. The top of the cistern was on a level with the barn floor and the defendant had removed the lid a few minutes before. The evidence for

the plaintiffs was that the little boy was with the defend-
ant and Gilmore on the street at the barn door; that
the door was opened by the defendant when he and Gil-
more and the boy went into the barn, after which the
door was closed; that the barn was dark under ordinary
conditions and especially so when the front door was
closed, and that the boy fell into the cistern soon after
the defendant took off the lid.   It was shown on behalf of
the defendant that when the boy was with them on the
street he told him to go away; that he did not want him
about and that he did not know the boy was in the barn
until his attention was called by Gilmore to the fact that
he had fallen into the cistern.   The testimony was brief
and was submitted to the jury on the inquiry whether the
boy went into the barn with the permission or knowledge
of the defendant.   This inquiry having been answered in
the affirmative the defendant contends that the evidence
does not support the judgment; that the boy was a tres-
passer on the premises and that the defendant owed him
no duty except to avoid willful and wanton injury.   As-
suming that the case is as disclosed by the evidence of
the plaintiffs the two men and the boy were standing at
the barn door, the boy being between them and close to
each of them; they then went into the barn and the de-
fendant closed the door; when the door was closed it was
not light inside; the defendant immediately removed the
cover from the cistern and stepped to the wall to find a
torch which he was about to light to enable him to re-
cover a bucket which was in the cistern; while he was en-
gaged in this search the boy fell into the hole.   The plain-
tiffs' evidence located the cistern at from eight to ten
feet from the door and the defendant's, at about fourteen
and one-half feet.   The defendant was a few feet from
the cistern when the accident took place.   This evidence
we think permits the reasonable inference that the boy
was in the barn with the permission of the defendant and
was at least a licensee on the premises.   If the defendant
knew that he went into the barn with him after which

the door was closed as the plaintiffs allege, a jury could well conclude that he was there with the defendant's permission, and while he had no business with the owner or with any other person on the premises he occupied the position of a volunteer or licensee. He was not a trespasser under such circumstances. A mere license or permission to enter or pass over premises will not impose an obligation on the part of the owner or person in possession to provide against the danger of accident. Where one is an invited guest the degree of care required is that of a licensor and licensee which requires only that the licensor shall not set traps for the licensee and shall refrain from reckless, willful or wanton misconduct tending to injure him. The owner gives the volunteers permission to use the premises and impliedly agrees that he will not create pitfalls for them or wrongly do anything to their injury, and where one is impliedly invited to enter on premises the host is under obligations to disclose concealed dangers. This is a general rule in this class of cases: Campbell on Negligence (2d ed.), 64; Hart v. Cole, 156 Mass. 470; West v. Poor, 196 Mass. 183. Applying this principle to the facts as found by the jury we have the defendant opening a pit on the barn floor near to the place where the boy was in a dimly lighted room. With the knowledge which the defendant is presumed to have had of the disposition and propensities of children of the age of this one to move about and gratify their curiosity it cannot be said that he owed no duty under the circumstances to refrain from creating a condition the existence of which produced a result so disastrous. The defendant's version of the case would excuse him from responsibility, for he was not aware that the boy was in the barn. Some discrepancies between his testimony at the trial and that given by him at the hearing by the coroner or the manner of the witnesses on the stand led the jury to discredit his statement and over that conclusion we have no control. We are of the opinion, however, that there is evidence supporting the allegation of the plaintiffs that the boy

was on the premises if not at the invitation at least by permission of the defendant and that being the case it was the duty of the latter to refrain from putting peril in his way.

The evidence offered on the subject of damages was all that could have been shown under the circumstances. The age and health of the child, the cost of his maintenance and the occupation and circumstances of the parents were shown. In making an estimate of the value of the life and consequent damage by death much is left to the sound discretion of the jury: Penna. R. R. Co. v. Zebe et al., 33 Pa. 318; McCleary v. Pittsburg Rys. Co., 47 Pa. Superior Ct. 366. Courts endeavor to define the measure of damages with precision but the application of the rule must be left to the jury. They are as competent to estimate the earning capacity of this child as would any witness be. The verdict is not extravagant and the jury evidently applied the instructions given by the court on that subject with discretion. On a careful consideration of the whole case we are of the opinion that the court was not in error in submitting it to the jury and that the instructions on the question of damage were correct.

The judgment is affirmed.